## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LUBOMIR MATAVKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| J. STERLING MORTON HIGH SCHOOL | ) | |
| DISTRICT 201, JOSEPH FLORIO, in his | ) | |
| official and individual capacity, and JAMES | ) | |
| ZUNDELL, in his official and individual | ) | |
| capacity, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, LUBOMIR MATAVKA, by and through his attorneys, Nicholas F. Esposito, Bradley K. Staubus, and Brittany N. Bermudez, and for his complaint against Defendants, J. STERLING MORTON HIGH SCHOOL DISTRICT 201, JOSEPH FLORIO, in his official and individual capacity, and JAMES ZUNDELL, in his official and individual capacity, alleges the following:

### Jurisdiction, Venue, and Parties

1.      This action is brought pursuant to: Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000e, *et seq.*) arising from acts of sexual harassment, sexual discrimination and a hostile work environment, and under 42 U.S. Code § 1983 and § 1988, as amended, for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States, and retaliating against Plaintiff for complaining about the discriminatory conduct. Thus, this action

arises under federal law and the United States Constitution including 42 U.S.C. Sections 1983 and 1988, as amended. This civil action seeks damages against all Defendants.

2.      The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, and §1343(4) because this action arises from an Act of Congress for the protection of civil rights.  The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and the United States Constitution, which rights provide for damages and other relief for illegal discrimination in employment.

3.      Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the plaintiff is a resident of a different state from the defendants and because the value of the matter in controversy exceeds $75,000

4.      Venue in this district is proper under 42 U.S.C. § 2000e-5(f) (3) and 28 U.S.C. § 1391(b) and (c) because the alleged conduct occurred in this district and the Defendant does business in this judicial district.

**Facts Common to All Counts**

5.      Plaintiff, LUBOMIR MATAVKA ("Plaintiff") is an adult male individual and he is a citizen of the State of Florida, who at all relevant times hereto, resided within this judicial district.

6.      Defendant, J. STERLING MORTON HIGH SCHOOL DISTRICT 201 ("Morton"), is located in Cook County, Illinois, is a corporate body and a political subdivision of the State of Illinois and a "person" subject to suit within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto acted under color of state law.

7.      Plaintiff was born in Slovakia.

8.      At all times relevant hereto, Plaintiff worked for Morton in its Cicero, Illinois location as a painter.

9.      Defendant, JOSEPH FLORIO ("Florio"), male, was a Maintenance Supervisor at Morton. He is sued for damages in his individual capacity and in his official capacity within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto acted under color of state law.

10.     At all relevant times hereto, Florio was Plaintiff's supervisor.

11.     Defendant, JAMES ZUNDELL ("Zundell"), male, was a Building and Grounds Superintendent at Morton. He is sued for damages in his individual capacity and in his official capacity within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto acted under color of state law.

12**.**     At all relevant times hereto, Zundell had supervisory authority over Florio and Plaintiff.

13.     Plaintiff timely filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging: 1) sex discrimination; 2) national origin discrimination; and 3) retaliation.

14.      On or around August 17, 2015, Plaintiff received his EEOC right to sue letter and has timely filed suit.

15.     On or around May 2010, Plaintiff began employment with Morton as a painter.

16.     From the beginning of his employment until his constructive discharge in or around August 2012, Plaintiff experienced same-sex sexual harassment, sex discrimination based on his sex, male, on a daily basis from his male-coworkers and male supervisor during work, work breaks, and lunch breaks. Plaintiff was also continuously harassed at home via text

messages and emails from his male-coworker(s). When Plaintiff complained of the harassment and/or discrimination to his supervisor(s), he was retaliated against and the harassment worsened.

17.     Every time that Plaintiff announced his number "66" into his school walkie-talkie, a ringtone (played by Brian Dominic ("Dominic") and other male co-workers) would respond with an Asian voice saying, "You are homosexual man. Answer phone, gay. Everybody knows you have sex with other men. Answer your phone. Everybody knows, it is okay. You gay. Gay." On information and belief, Steve Majeras ("Majeras") named the ringtone "Lubo[mir]'s song" in his phone.

Other times, Jamie Kulik ("Kulik"), Robert Sassano ("Sassano") and Majeras repeatedly called him "gay" and/or told him to "suck it" and/or made kissing noises on the walkie-talkie. Every individual in the district with a walkie-talkie could hear it, including the following individuals: 1) James Zundell, Morton's Building and Grounds Superintendent; 2) Michael Kuzniewski, Superintendent; 3) Linda Bultrini, Director of Security; 4) Jose Gamboa, Assistant Principal; and 5) Frank Zarette, Principal.

18.     Plaintiff would find drawn penises and other lewd drawings on his paper time cards on a weekly basis. Plaintiff showed his time cards to Florio. Nothing changed.

19.     Sassano told Plaintiff, while wagging his tongue, to "suck it and lick it" on a daily basis.

20.     Sassano, in the presence of others, on a daily basis attempted to rear hump Plaintiff in the cafeteria and/or engage in other sexually suggestive moves until Plaintiff would push him away.

21.     In or around summer 2010, Plaintiff's supervisor Florio called Plaintiff outside of the garage, at which time a bucket of water was thrown on top of him from atop the garage. On another occasion in or around summer 2010, while Plaintiff was on a ladder painting a classroom working on the 4th floor, Florio and fellow employees Dominic, Kulik, and another male came upstairs, pulled out water guns and aimed and squirted them at Plaintiff.  Plaintiff almost fell off the ladder.

22.     In or around summer 2010, Plaintiff complained to his Morton Employee and Union Representative, Rob Zudarski ("Zudarski"). He agreed that Plaintiff was being harassed and promised to talk to the responsible employees.  From and after summer 2010 and until his constructive discharge in or around August 2012, Plaintiff complained to Zudarkski at least a couple of times a week about his co-workers' conduct.  Nothing changed.

23.     From and after summer 2010 and until his constructive discharge in or around August 2012, Plaintiff had conversations with Florio at least three times a week about his co-workers' conduct. Whenever Plaintiff complained, Florio laughed and said "it was no big deal". Nothing changed.

24.     From and after summer 2010 and until his constructive discharge in or around August 2012, Plaintiff had numerous conversations with Zundell several times a week about his co-workers' conduct. Whenever Plaintiff complained, Zundell told Plaintiff to have a thicker skin and/or that he would talk to the "guys". Nothing changed.

25.     In or around late-2010/early-2011, Plaintiff also received repeated text messages stating, "Fuck you" every second (about 300 messages) from a blocked number.  The messages continued until his battery ran out.

26. When Plaintiff complained to his harrassers about their conduct, Sassano, Dominic and/or Kulic told him to "go back to [his] fu***ng country", "to hang [himself]", and/or "to kill [himself]".

27. As a result of the above described harassment, discrimination and/or retaliation, in or around summer 2011 Plaintiff stayed home for a month, taking all of his sick and vacation leave. Prior to going back to work, Plaintiff contacted Zundell about the above-described conduct and informed him that he did not want to return to work. Zundell told Plaintiff to go back to work because it would not look good for Zundell since he was the one who brought Plaintiff into the school district. Zundell promised Plaintiff everything would be different. Plaintiff returned to work. Nothing changed.

28. In or around summer 2011, Plaintiff played on a softball team. Sassano took pictures during the game and sent them to Plaintiff with an email stating, "First gay softball player".

29. In or around late-summer/early fall 2011, Plaintiff was locked in a hallway by the paint room. Kulik threw a stink bomb in the hallway before locking the door. Plaintiff could hear people laughing and when he was finally let out of the hallway, Plaintiff almost vomited.

30. In or around late-summer/early fall 2011, Plaintiff's car was shrink-wrapped.

31. In or around April and/or May 2012, while Plaintiff was working Sassano ran towards Plaintiff with his pants down and his boxers on. Sassano then tried to hug Plaintiff. This happened twice.

32. Leading up to summer 2012, Plaintiff's male co-workers (Dominic, Sassano and/or Majeras) made homosexual jokes about Plaintiff's in the presence of Plaintiff and/or

others and the same male co-workers made suggestive sexual gestures toward Plaintiff during almost every lunch break and/or work break.

33.     In or around summer 2012, Plaintiff stopped eating in the cafeteria, fearing that he would continue to be harassed and/or discriminated against. He ate in the shop, alone. He also stopped taking breaks in the break room.

34.     In or around 2012, another co-worker told Plaintiff in the presence of others that his Facebook profile said that he was interested in "boys and men". Plaintiff logged in immediately and changed it. On information and belief, a male co-worker changed his Facebook information.

35.     On or around June 25, 2012, Majeras, in the presence of others, asked Plaintiff why he was so tan. Plaintiff responded that he went on the bike trail. Majeras then asked if Plaintiff actually went downtown to the Gay Pride Parade. On the same day, when Plaintiff was making a phone call Sassano came up from behind and grabbed Plaintiff's buttocks. Florio witnessed this incident and did nothing to stop it. Instead, Florio laughed. Plaintiff then asked Florio why he did not stop it. Florio responded that he thought "it was funny" and that it was "no big deal".

36.     In or around June 2012, Plaintiff was waiting at Morton for a truck to pick him up. Plaintiff's co-workers— Florio, Brad Bishop ("Bishop") and Kulik—were in the truck when it arrived. Kulik pulled out a large water gun and sprayed Plaintiff with it until he was soaked. Florio and Morton Athletic Director, Steve Lemon ("Lemon"), both saw the incident. When Plaintiff asked Lemon to confirm what he saw, Lemon denied seeing anything. On the way back to the office Plaintiff told Florio, "Joe you are my supervisor; these things [the harassment] have to stop or I have to do something." Florio asked, "Why, are you going to sue me?" When they

arrived at the office, Dominic yelled, "Fuck you, [Plaintiff]" at least 5 or 6 times, and said, "If you don't like it, go hang yourself."

37.    In or around June 2012, Florio, Kulik and Dominic approached Plaintiff from another building and yelled, "What's up Sally" (Plaintiff was wearing cut-off shorts).

38.    In or around summer 2012, Plaintiff received lewd texts, photos, emails and/or voicemails from his male co-workers, including but not limited to, an email stating "U . . . are homosexual", and a voice text message allegedly from a CVS pharmacy informing him that his anal wart remover, butt plugs, and Viagra, and extra small condoms were available for pick up.

39.    In or around summer 2012, Plaintiff again contacted Zundell about the harassment and discrimination and asked for help. Once again, Zundell told Plaintiff to go back to work because it would not look good for Zundell since he was the one who brought Plaintiff into the school district.  Zundell promised Plaintiff everything would be different.  Plaintiff returned to work and nothing changed.

40.    On or around August 23, 2012, did not return to work and was constructively discharged.

41.    Employees of the opposite sex were not subjected to the discriminatory acts and/or conduct. Plaintiff was subjected to such discrimination and/or harassment substantially on the basis of his sex, male.

42.    As a result of the aforementioned conduct, Plaintiff suffered severe emotional distress, including but not limited to: feeling threatened; high blood pressure; acid reflux; anger; embarrassment; nausea; depression; insomnia; despair; loss of appetite; nightmares; crying; nervousness; anxiety and fear about what harassment he would occur the following day. As a result, he has had to seek medical treatment.

## COUNT I
### Hostile Environment Same-Sex Sexual Harassment
### Pursuant to Title VII of the Civil Rights Act of 1964
### (Against Morton)

43.    Paragraphs one through forty-two (1-42) are incorporated herein by reference as paragraph forty-three (43).

44.    Plaintiff is a member of a protected class.

45.    Plaintiff was subjected to continuous, unwelcome sexual harassment, including but not limited to, sexually suggestive and derogatory comments and improper physical sexual contacts by his male co-worker(s) and/or supervisor(s), which perpetrated a hostile work environment based upon his sex, male, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

46.    Such conduct was so severe and/or pervasive that it affected the terms, conditions, and/or privileges of Plaintiff's employment with Morton in that the harassment unreasonably interfered with his work performance and/or created an intimidating, hostile and/or offensive work environment. The sexual harassment created an objectively hostile work environment and Plaintiff perceived it as such.

47.    Plaintiff informed Defendant, Morton, of his co-worker(s)' unwanted sexual harassment. Morton knew and/or should have known of the severe and pervasive harassment and failed to take appropriate corrective action.

48.    Defendant, Morton, through its supervisors, employees and/or agents engaged in unlawful same-sex sexual harassment, and thereby unreasonably interfered with his work performance, and/or created an intimidating, hostile, or offensive work environment.

49.    Despite Plaintiff's complaints to Defendant, Morton, such conduct was condoned, approved of and/or encouraged by Defendant, Morton, who, while informed of such conduct,

took no steps to correct the same-sex sexual harassment, which forced Plaintiff to submit to such further conduct and emotional distress, which led to his constructive discharge.

50.     Defendant, Morton, failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate sexual harassment from the workplace and to prevent it from occurring in the future in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

51.     As a direct and proximate result of  Defendant Morton's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

52.     Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA, prays for judgment in his favor and against Defendant, J. STERLING MORTON HIGH SCHOOL DISTRICT 201, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

## COUNT II
### Same-Sex Sexual Discrimination
### Pursuant to Title VII of the Civil Rights Act of 1964
### (Against Morton)

53.     Paragraphs one through fifty-three (1-52) are incorporated herein by reference as paragraph fifty-three (53).

54.     Plaintiff is a member of a protected class.

55.     Plaintiff performed his job duties to Morton's expectations.

56.     Plaintiff suffered adverse employment action(s).

57.     Employees outside Plaintiff's protected class were treated more favorably, and/or Plaintiff was treated unfavorably because of his class.

58.     As a direct and proximate result of  Defendant Morton's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

59.     Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA**,** prays for judgment in his favor and against Defendant, J. STERLING MORTON HIGH SCHOOL DISTRICT 201, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

## COUNT III
### Retaliatory Discrimination Pursuant to Title VII
### of the Civil Rights Act of 1964
### (Against Morton)

60.     Paragraphs one through fifty-nine (1-59) are incorporated herein by reference as paragraph sixty (60).

61.     During Plaintiff's employment with Morton, he engaged in statutorily protected expression.

62.     As a result of engaging in such statutorily protected expression, Plaintiff was subjected to adverse employment actions, which affected the terms and conditions of his employment.

63.     Defendant, Morton, engaged in discriminatory retaliation against Plaintiff for exercising his statutory rights in complaining about discrimination and harassment by fellow employee(s) and supervisor(s), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

64.     There is a causal link between Plaintiff's statutorily protected expression and the adverse employment action.

65.     As a direct and proximate result of  Defendant Morton's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

66.     Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA, prays for judgment in his favor and against Defendant, J. STERLING MORTON HIGH SCHOOL DISTRICT 201, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**COUNT IV**
**Constitutional and Civil Rights Pursuant**
**to 42 U.S.C. §§ 1983, 1988 Violation of the Fourteenth Amendment-**
**Equal Protection Prohibiting Same-Sex Sexual Harassment**
**(Against Morton)**

67.     Paragraphs one through sixty-six (1-66) are incorporated herein by reference as paragraph sixty-seven (67).

68.     Defendant, Morton, conduct is violative of the Fourteenth Amendment of the U.S. Constitution's equal protection/right to be free from sex discrimination, which includes same-sex sexual harassment, and retaliation arising therefrom, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress.

69.     Defendant, Morton, engaged in a widespread, unwritten, custom and/or practice to disregard clearly written policies prohibiting sexual harassment, including but not limited to disregard for required investigatory processes, and retaliation for reporting discrimination, and/or

that decisions were made by Defendant Morton's agents with final policymaking authority, contrary to express requirements prohibiting discrimination and retaliation.

70.     Defendant, Morton, acting under color of state law, deprived Plaintiff of his constitutional rights and/or acted intentionally and/or with callous disregard for Plaintiff's clearly established constitutional rights.

71.     As a direct and proximate result of Defendant Morton's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

72.     Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA**,** prays for judgment in his favor and against Defendant, J. STERLING MORTON HIGH SCHOOL DISTRICT 201, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

## COUNT V
### Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation of the Fourteenth Amendment-Equal Protection Based Upon Sex Discrimination (Against Morton)

73.     Paragraphs one through seventy-three (1-72) are incorporated herein by reference

as paragraph seventy-three (73).

74.     Defendant, Morton, violated Plaintiff's Fourteenth Amendment equal protection rights by allowing him to be subjected to sex discrimination, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

75.     Defendant, Morton, engaged in a widespread, unwritten, custom and/or practice to disregard clearly written policies prohibiting sex harassment, including but not limited to disregard for required investigatory processes, and retaliation for reporting discrimination, and/or that decisions were made by Defendant Morton's agents with final policymaking authority contrary to express requirements prohibiting discrimination and retaliation.

76.     Defendant, Morton, acting under color of state law, deprived the Plaintiff of his constitutional rights and/or acted intentionally and/or with callous disregard for Plaintiff's clearly established constitutional rights, and/ or that it treated him differently than female employees.

77.     As a direct and proximate result of Defendant Morton's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

78.     Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA, prays for judgment in his favor and against Defendant, J. STERLING MORTON HIGH SCHOOL DISTRICT 201, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

### COUNT VI
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988**
**Violation of the Fourteenth Amendment-Equal Protection Prohibiting Retaliation for**
**Reporting Sex Discrimination and/or Same-Sex Sexual Harassment**
**(Against Morton)**

79.     Paragraphs one through seventy-eight (1-78) are incorporated herein by reference as paragraph seventy-nine (79).

80.     Defendant Morton's conduct is violative of the Fourteenth Amendment of the U.S. Constitution's equal protection/right to be free from retaliation arising from reporting sex discrimination and/or same-sex sexual harassment, to wit:.

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

81.     Defendant, Morton, engaged in a widespread, unwritten, custom and/or practice to disregard clearly written policies prohibiting sex discrimination and/or same-sex sexual harassment, including but not limited to disregard for required investigatory processes, and retaliation for reporting discrimination and/or harassment, and/or that decisions were made by

Defendant Morton's agents with final policymaking authority contrary to express requirements prohibiting discrimination and retaliation.    Defendant Morton also failed to adequately train Morton staff about policies prohibiting harassment and discrimination on the basis of sex, male, and retaliation.  This failure to train caused Plaintiff to be subjected to discrimination and/or harassment on the basis of sex, male, and retaliation.

82.    As a direct and proximate result of Defendant Morton's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

83.    Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA**,** prays for judgment in his favor and against Defendant, J. STERLING MORTON HIGH SCHOOL DISTRICT 201, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

<u>**COUNT VII**</u>
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation
of the Fourteenth Amendment-Equal Protection
Based Upon Same-Sex Sexual Harassment
(Against Florio and Zundell in their Official Capacities)**

84.     Paragraphs one through eighty-three (1-83) are incorporated herein by reference as paragraph eighty-four (84).

85.     Florio and Zundell violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting him to further same-sex sexual harassment by his co-worker(s), to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

86.     Florio and Zundell each had final policymaking authority. Each acted under color of state law, engaged in a policy, custom and/or practice of condoning same-sex sexual harassment based upon Plaintiff's sex, which deprived Plaintiff of his constitutional rights.

87.     Florio not only directly caused and/or participated in the same-sex sexual harassment, he also acted and/or failed to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to him by the Fourteenth Amendment, or in the alternative, Florio knew about Plaintiff's co-workers' conduct towards him, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

88.     Zundell acted and/or failed to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to him by the Fourteenth Amendment, or in the alternative, Zundell knew about Plaintiff's supervisor, Florio, and Plaintiff's co-workers' conduct towards him, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

89.     As a direct and proximate result of Florio and Zundell's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage

including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

90.     Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA, prays for judgment in his favor and against Defendants, JOSEPH FLORIO and JAMES ZUNDELL, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

### COUNT VIII
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation
of the Fourteenth Amendment-Equal Protection Based Upon Sex Discrimination
(Against Florio and Zundell in their Official Capacities)**

91.     Paragraphs one through eighty-nine (1-89) are incorporated herein by reference as paragraph ninety (90).

92.     Florio and Zundell violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting him to sex discrimination, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

19

93.     Florio not only directly caused and/or participated in the sex discrimination, he also acted and/or failed to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to him by the Fourteenth Amendment, or in the alternative, Florio knew about Plaintiff's co-workers' conduct towards him, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

94.     Zundell acted and/or failed to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to him by the Fourteenth Amendment, or in the alternative, Zundell knew about Plaintiff's supervisor, Florio, and Plaintiff's co-workers' conduct towards him, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

95.     As a direct and proximate result of Florio and Zundell's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, punitive damages,  extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

96.     Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA**,** prays for judgment in his favor and against Defendants, JOSEPH FLORIO and JAMES ZUNDELL, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay,

reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

<u>COUNT IX</u>
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988**
**Violation of the Fourteenth Amendment-Equal Protection Prohibiting Discrimination and Retaliation for Reporting Sex Discrimination and/or Same-Sex Sexual Harassment**
**(Against Florio and Zundell in their Official Capacities)**

97.     Paragraphs one through ninety-six (1-96) are incorporated herein by reference as paragraph ninety-seven (97).

98.      Florio and Zundell, each acting under color of state law, had actual knowledge that there was sex discrimination and/or same-sex sexual harassment based on sex, male, and retaliation, and Florio and Zundell were/are personally responsible for the deprivation of a constitutional right, knew about and/or facilitated the prohibitive conduct, approve it, condone it, or turned a blind eye to it, such that it was so severe, pervasive, and objectively offensive that it created a hostile climate that deprived Plaintiff of his constitutional rights and liberties and access to income, benefits, programs, and opportunities.

99.     The practices, policies, or customs of Florio and Zundell, as individuals with final policymaking authority, have engaged in, contributed to and continue to engage and contribute to a retaliatory environment against a male employee complaining violation of statutory and constitutional rights.

100.    Florio and Zundell also failed to adequately train Morton staff about policies prohibiting same-sex sexual harassment and discrimination on the basis of sex, male, and retaliation.  This failure to train caused Plaintiff to be subjected to discrimination and harassment on the basis of sex, male, and retaliation.

101.    The violations of Plaintiff's rights under the Fourteenth Amendment by Florio and Zundell named in this claim were the actual, direct, and proximate cause of injuries suffered by Plaintiff as alleged.

102.    As a direct and proximate result of Florio and Zundell's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

103.    Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA**,** prays for judgment in his favor and against Defendants, JOSEPH FLORIO and JAMES ZUNDELL, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

### COUNT X
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation of the Fourteenth Amendment-Equal Protection Based Upon Same-Sex Sexual Harassment (Against Florio and Zundell in their Individual Capacities)**

104.    Paragraphs one through one-hundred three (1-103) are incorporated herein by reference as paragraph one-hundred four (104).

22

105.    Defendants, Florio and Zundell, each violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting him to a hostile environment of same-sex sexual harassment, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

106.    Florio both intended to and did sexually harass Plaintiff based on his sex. Additionally, Florio both intended to and did act and/or fail to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to him by the Fourteenth Amendment, or in the alternative, Florio knew about Plaintiff's co-workers' conduct towards him, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

107.    Zundell both intended to and did act and/or fail to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to him by the Fourteenth Amendment, or in the alternative, Zundell knew about Plaintiff's supervisor, Florio, and Plaintiff's co-workers' conduct towards him, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

108.    As a direct and proximate result of Florio and Zundell's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, punitive damages, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other

compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

109. Plaintiff is also entitled to and seeks one million dollars ($1,000,000) punitive damages against each of Florio and Zundell in their individual capacities.

110. Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA, prays for judgment in his favor and against Defendants, JOSEPH FLORIO and JAMES ZUNDELL, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

### COUNT XI
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation of the Fourteenth Amendment-Equal Protection Based Upon Sex Discrimination (Against Florio and Zundell in Their Individual Capacities)**

111. Paragraphs one through one-hundred ten (1-110) are incorporated herein by reference as paragraph one-hundred twelve (112).

113. Florio and Zundell violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting him to sex discrimination, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

114. Florio both intended to and did discriminate against Plaintiff based on his sex. Additionally, Florio both intended to and did act and/or fail to act with deliberate or reckless

disregard of Plaintiff's constitutional rights afforded to him by the Fourteenth Amendment, or in the alternative, Florio knew about Plaintiff's co-workers' conduct towards him, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

115.    Zundell both intended to and did act and/or fail to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to him by the Fourteenth Amendment, or in the alternative, Zundell knew about Plaintiff's supervisor, Florio, and Plaintiff's co-workers' conduct towards him, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

116.    As a direct and proximate result of Florio and Zundell's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, punitive damages,  extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

117.    Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA, prays for judgment in his favor and against Defendants, JOSEPH FLORIO and JAMES ZUNDELL, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

## COUNT XII
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988**
**Violation of the Fourteenth Amendment-Due Process in Reporting Discrimination and**
**Retaliation for Reporting Discrimination**
**(Against Florio and Zundell in their Individual Capacities)**

118.    Paragraphs one through one-hundred seventeen (1-117) are incorporated herein by reference as paragraph one-hundred eighteen (118).

119.    Florio and Zundell are each final policy-makers and decision-makers for Morton and set custom and policy for Morton.

120.    Florio both intended to and did retaliate against Plaintiff based on his complaints of discrimination and/or same-sex sexual harassment against him.

121.    Zundell both intended to and did act and/or fail to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to him by the Fourteenth Amendment, or in the alternative, Zundell knew about Plaintiff's supervisor, Florio, and Plaintiff's co-workers' retaliatory conduct towards Plaintiff, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating and/or stopping and/or  punishing said individuals for their retaliatory conduct towards Plaintiff, and in fact participated in the retaliatory conduct.

122.    As a direct and proximate result of Florio and Zundell's retaliatory conduct against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, punitive damages, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

123.    Plaintiff is also entitled to and seeks one million dollars ($1,000,000) punitive damages against each of Florio and Zundell in their individual capacity.

124.    Plaintiff also seeks prejudgment interest, post-judgment interest and costs, including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, LUBOMIR MATAVKA**,** prays for judgment in his favor and against Defendants, JOSEPH FLORIO and JAMES ZUNDELL, and asks that the Court award his direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**JURY TRIAL IS DEMANDED FOR ALL COUNTS.**

Respectfully submitted,
**LUBOMIR MATAVKA**

/s/ Nicholas F. Esposito
One of Plaintiff's Attorneys

Nicholas F. Esposito, Atty. # 0755176
Bradley K. Staubus, Atty. # 6230326
Brittany N. Bermudez, Atty. # 6317591
ESPOSITO & STAUBUS LLP
7055 Veterans Blvd., Unit B
Burr Ridge, IL 60527
(312) 346-2766