IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUBOMIR MATAVKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15 C 10330 |
| | ) |
| BOARD OF EDUCATION OF J. STERLING | ) |
| MORTON HIGH SCHOOL DISTRICT 201, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Lubomir Matavka ("Matavka") initially filed a 12-count Complaint against his former employer, Board of Education of J. Sterling Morton High School District 201,[1] and two of its employees (both in the supervisory chain above Matavka), asserting (1) claims of employment discrimination under Title VII and (2) claims of constitutional violations assertedly actionable under 42 U.S.C. § 1983 ("Section 1983"). When defendants moved to dismiss Matavka's Complaint under Fed. R. Civ. P. ("Rule") 12(b)(6), this Court accepted their argument that the Section 1983 claims were barred by limitations, and Matavka then filed an Amended Complaint that dropped all nine counts grounded in Section 1983 and reiterated his Title VII claims in the three surviving counts, at the same time correcting the misnomer referred to n.1 of this opinion.

---

[1] As the initial motion to dismiss Matavka's Complaint pointed out, under Illinois law the Board of Education of such a school district is the appropriate defendant with the exclusive right to sue or be sued. After Matavka's error in having named the School District rather than its Board as the defendant in his original Complaint was pointed out, he corrected that mistake in his Amended Complaint. For convenience this opinion will refer to his targeted defendant simply as "Morton High."

As appalling as was the conduct ascribed to Matavka's coworkers and supervisors as set out in this Court's May 31, 2016 memorandum order (the "May 31 Order") that has been attached to this opinion, Morton High's view is that the very nature of such conduct "dooms Matavka's recovery because harassment based on sexual orientation is not actionable under Title VII" (this quotation is taken from the May 31 Order). As the May 31 Order went on to explain, Morton High's motion to dismiss the Amended Complaint was placed on the back burner because our Court of Appeals then had a fully briefed and orally argued case before it that posed the same problem -- a case whose resolution was complicated by the ferment as to the scope and meaning of the word "sex" in Title VII that had been generated by the EEOC's July 15, 2015 reversal of its position on that subject. Because it is of course impossible to gauge from the outside the length of time that may be needed to produce an opinion from any appellate court -- as Abraham Lincoln famously responded to an exclamation about how long-legged he was, his legs were "long enough to reach the ground" -- in this instance the time elapsed since the September 30, 2015 oral argument in <u>Hively v. Ivy Tech Comty. Coll.</u> had already spanned seven months when this Court issued the May 31 Order.

In another instance of the serendipity encountered from time to time in connection with matters pending before a District Judge, the decision in <u>Hively</u> (cited here as "<u>Hively</u> at --," referring to pages of the Court of Appeals' slip opinion) was issued on July 28 -- just one day before the 9 a.m. July 29 status hearing date that this Court had arbitrarily chosen to discuss the stay that this Court had placed on Morton High's motion to dismiss. This opinion turns then to the impact of <u>Hively</u> on the previously stayed motion.

Briefly put, Parts I and II.A of Judge Rovner's opinion for the <u>Hively</u> panel occupied just 9 pages in adhering to the Seventh Circuit's repeated holdings "that the Title VII prohibition on

discrimination based on 'sex' extends only to discrimination based on a person's gender, and not that aimed at a person's sexual orientation" (Hively at 4), going back to the three-decade-old dictum in Ulane v. Eastern Airlines, Inc., 742 F.2d 1081, 1084 (7th Cir. 1984) that "homosexuals and transvestites do not enjoy Title VII protection." In particular Part II.A cited, quoted and adhered to the Hamner and Spearman cases that had been cited by Morton High and that were also cited and quoted in the May 31 Order as exemplary of the Seventh Circuit's repeated reconfirmation of the Ulane ukase.

With this Court of course bound to follow our Court of Appeals' precedential decision, it could well say, as Hively at 9 did immediately following its Part II.A, "We could end the discussion there" and simply grant Morton High's motion to dismiss. But something more must be said in light of the quite remarkable 33-page exposition and analysis set out in Hively's Part II.B by Judge Rovner, joined by panel member Judge Bauer.[2]

As stated earlier, the EEOC has announced its reconsideration of the proper reading of the word "sex" in Title VII (a change of position that is not of course binding on the federal judiciary). But it is not alone in its desire to conform the law to the changes in public perception that have created judicial turmoil because Congress has been unresponsive to the widespread sense that public opinion no longer subscribes to the constricted mindset reflected in the earlier-quoted dictum from Ulane.

As Hively at 5 states, stare decisis principles call for the result reached there by the Court of Appeals (and of course basic jurisprudential principles compel a District Court's adherence to its Court of Appeals' precedential rulings). Stare decisis is not however immutable -- perhaps the

---

[2] Judge Ripple, the third member of the Hively panel, joined the Court's judgment and, in doing so, joined Parts I and II.A (but not Part II.B) of the panel's opinion.

most noteworthy example of our time has been the unanimous decision of the Supreme Court in Brown v. Bd. of Educ., 347 U.S. 483 (1954). But the Supreme Court's overturning of the long-lived "separate but equal" doctrine in that case was a matter of reversing course in a judicial reading of the Constitution -- a matter quite different from altering the established judicial reading of a word contained in congressional legislation.

Whether that is a principled distinction may perhaps be subject to debate, but one possible rationale suggests itself. While the late Justice Anthony Scalia sought to portray himself as a staunch advocate of adhering to what he viewed as the original intent of constitutional language, he did not acknowledge that to change the original meaning of the word "arms" in the Second Amendment, as he did, was an exercise in revisionist history -- and despite his announced disdain for those who speak of a "living Constitution" in justifying changes in the judicial reading of that document, what amounted to his effective application of the "living Constitution" approach in the Second Amendment context could well have reflected a recognition that amending the Constitution is far more difficult in real world terms than amending a statute.

What has just been said here might be viewed as a digression because it is not necessary to this opinion's earlier announced outcome. But it has been occasioned by the thoughtful and extensive discussion in Hively's Part II.B of the dilemma reflected in the struggles by District Courts such as this one, and by Courts of Appeals as well, in addressing the problems exemplified by this case.

**<u>Conclusion</u>**

For the reasons stated here, Morton High's Rule 12(b)(6) motion is granted and the Complaint is dismissed. And because this Court finds unpersuasive the earlier effort by Matavka's counsel to reshape the straightforward allegations of the Amended Complaint, which describe the disgusting conduct to which Matavka was subjected, into a different mold that might perhaps survive the flat-out holding in <u>Hively</u>, Matavka's action is dismissed as well.

                                                            Milton I. Shadur
                                                            Senior United States District Judge

Date: August 1, 2016

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUBOMIR MATAVKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15 C 10330 |
| | ) |
| BOARD OF EDUCATION OF J. STERLING | ) |
| MORTON HIGH SCHOOL DISTRICT 201, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Board of Education of J. Sterling Morton High High School District 201 ("Morton High") has filed a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss the Amended Complaint ("AC") brought against it by Lubomir Matavka ("Matavka"), in which he seeks recovery for asserted violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Matavka alleges that while employed by Morton High he experienced severe harassment from his coworkers and supervisors, including taunts that he was "gay" and should "suck it" (AC ¶ 16), frequent jokes about his perceived homosexuality (AC ¶ 31), the hacking of his Facebook account to identify him publicly as "interested in "boys and men"" (AC ¶ 33) and an email stating "U . . . are homosexual" (AC ¶ 37).

In Morton High's view that appalling conduct dooms Matavka's recovery because harassment based on sexual orientation is not actionable under Title VII. And for that proposition Morton High can cite -- and has cited -- numerous authorities that bind this Court. To take just one example, Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc., 224 F.3d 701,

ATTACHMENT

704 (7th Cir. 2000) (internal citations, quotation marks and footnote omitted) put that proposition in these terms:

> The phrase in Title VII prohibiting discrimination based on sex means that it is unlawful to discriminate against women because they are women and against men because they are men. In other words, Congress intended the term "sex" to mean "biological male or biological female," and not one's sexuality or sexual orientation. Therefore, harassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII.

Because it is difficult to escape the conclusion that Matavka's harassment was rooted in his perceived sexual orientation, Hamner -- the holding of which was echoed shortly thereafter by Spearman v. Ford Motor Co., 231 F.3d 1080, 1085-86 (7th Cir. 2000) -- would appear to bury Matavka's lawsuit.

But fortunately for Matavka his action may be spared by a recent ruling of the United States Equal Employment Opportunity Commission ("EEOC") that is prompting reconsideration of Title VII's breadth. Less than a year ago Baldwin v. Foxx, Appeal No. 0120133080, 2015 WL 4397641, at *10 (July 15, 2015) reversed decades of EEOC guidance in finding persuasively that discrimination on the basis of sexual orientation is actionable under Title VII:

> We further conclude that allegations of discrimination on the basis of sexual orientation necessarily state a claim of discrimination on the basis of sex. An employee could show that the sexual orientation discrimination he or she experienced was sex discrimination because it involved treatment that would not have occurred but for the individual's sex; because it was based on the sex of the person(s) the individual associates with; and/or because it was premised on the fundamental sex stereotype, norm, or expectation that individuals should be attracted only to those of the opposite sex.

While that ruling does not of course bind this Court, a case argued before our Court of Appeals on September 30, 2015 and awaiting decision -- Hively v. Ivy Tech Cmty. Coll., No. 15-1720 -- is poised to revisit the question whether sexual orientation discrimination is

indeed sex discrimination in light of Baldwin. Should Hively follow recent district court decisions[1] in finding Baldwin persuasive, that finding plainly would affect the disposition of Morton High's motion. That being so, the prudent course at present is to stay this matter pending the issuance of a decision in Hively -- a decision that should clarify whether Matavka's AC can be sustained.

Accordingly Morton High's motion is ordered stayed, and the parties are ordered to appear for a status hearing at 9 a.m. July 29, 2016. Because that date has obviously been chosen arbitrarily (to avoid any prospect of this case's falling between the figurative tracks), two qualifications are called for:

1. If Hively should be decided in the interim, it is expected that either party will bring the matter on before this Court by motion promptly thereafter; or

2. failing such a motion as the status hearing date approaches, this Court will issue a minute order vacating that date and setting a replacement date.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 31, 2016

---

[1] See, e.g., Isaacs v. Felder Servs., LLC, 2015 WL 6560655, at *3 (M.D. Ala. Oct. 29); Videckis v. Pepperdine Univ., 2015 WL 8916764, at *8 (C.D. Cal. Dec. 15).